UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BARRY R. SCHOTZ,                        )
                                        )
        Plaintiff,                      )
                                        )
    v.                                  )    Civil Action No.  14-1212 (BAH)
                                        )
UNITED STATES DEPARTMENT                )
OF JUSTICE,                             )
                                        )
        Defendant.                      )

**MEMORANDUM OPINION**

The plaintiff, Barry R. Schotz, challenges the responses of the Federal Bureau of Prisons ("BOP") and the Executive Office for United States Attorneys ("EOUSA") to his requests for records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  Both BOP and EOUSA are components of the Department of Justice ("DOJ"), which has moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Def.'s Mot. Summ. J. ("Def.'s Mot."), ECF No. 13.  The plaintiff has cross-moved for summary judgment. Pl.'s Mot. Summ. J. ("Pl.'s Cross-Mot."), ECF No. 23.  Upon consideration of the parties' submissions and the entire record, the Court grants the defendant's motion, denies the plaintiff's motion, and enters judgment accordingly.

**I. BACKGROUND**

The events forming the basis of the plaintiff's ten claims set out in the amended complaint, ECF No. 9, are as follows.

1

**A. Request Number 2013-09815 (Claim 1)**

In a FOIA request, dated July 5, 2013, the plaintiff sought from BOP essentially all records pertaining to Dr. Gary L. Henderson, M.D., who had contracted with BOP to provide medical services. Decl. of Beth Ochoa, Att. 1, ECF No. 13-3. The plaintiff explained that Dr. Henderson had performed surgery on him while he was incarcerated at the Federal Correctional Complex in Tucson, Arizona ("FCC Tucson"). Thus, BOP interpreted the request as seeking "any document in Plaintiff's Medical Record regarding [Dr. Henderson]." Ochoa Decl. ¶ 5. By letter, dated August 8, 2013, BOP released five pages of the plaintiff's "medical documents with regards to [Dr. Henderson]." *Id*., Att. 2. BOP stated that it was unclear "what other records" the plaintiff sought but that it lacked authorization from Dr. Henderson to release any personal information. *Id*.

In his appeal of BOP's determination to DOJ's Office of Information Policy ("OIP"), the plaintiff stated that he was "seeking records by and between all parties otherwise clearly identified in the body of the FOIA request pursuant [to] the contract and authorizing of [Dr. Henderson] to provide contract medical services." *Id*., Att. 3. In response, OIP asked BOP to conduct "an additional search for any documents regarding the contracting of [Dr. Henderson]." *Id*. ¶ 6. The medical staff at FCC Tucson explained that it had no responsive records because, at the relevant time period, "the Health Services Department . . . was contracting through MDI for outside consultations and medical procedures. It was [MDI's] responsibility . . . to verify the credentials of their physicians, hospitals and consultants." *Id*. Consequently, FCC Tucson had no record systems to search because it "[did] not maintain and/or verify Medical Doctors' credentials practicing at local hospitals." *Id*. In a letter dated

September 30, 2013, OIP affirmed BOP's determination upon concluding "that BOP has now conducted an adequate, reasonable search for such records."  Am. Compl., Ex. A, ECF 9-1 at 23.

**B.  Request Number 2013-11514 (Claim 2)**

In a FOIA request, dated August 24, 2013, the plaintiff requested from BOP authorizations for escorted medical trips on various dates in 2011 and 2012 while he was designated to two different facilities. Specifically, he requested such authorization records for medical trips on July 5, 2011, July 20, 2011, August 15, 2011, and September 30, 2011, while he was "designated at Federal Correctional Complex-United States Penitentiary-Satellite Prison Camp," and trips occurring in "late June/early July, 2012," July 26, 2012, August 8, 2012, September 11, 2012, and September 13, 2012 "while [he was] designated to Federal Correctional Institution Safford, Arizona."  Ochoa Decl., Att. 5.  The plaintiff listed "potential locations" where the records might be found as the "Inmate Central File; Inmate Medical Records (including BEMR); Custody Transportation (Captains' Records); Medical Trips Coordinator Office; Transportation Department . . . and/or SENTRY."  *Id*.  In addition, the plaintiff provided the names of clinical directors, unit managers and the last name of the "Captain for Tucson" as potential leads for locating the records.  *Id*.  The plaintiff ended by "requesting any and all records, including, but not limited to: files, logs, writings, memorandums to and among BOP Staff Members or by and between Departments, by and between any and all outside contracted health care consultants."  *Id*. at 2.

BOP interpreted the plaintiff's request as seeking "Escorted Trip Authorization forms (BP-A0502)," which "are maintained in Section Five and/or Section Six of the inmate's Central File."  Ochoa Decl. ¶ 8.  A manual search of the plaintiff's Central File located no responsive

records. Medical staff also searched the plaintiff's "Medical Record," which is an electronic record without "a search function." That additional search, performed "in an abundance of caution" since such forms are "not typically placed in the Medical Record," yielded no responsive records for 2011. *Id*.

By letter, dated December 3, 2013, BOP released nine pages responsive to the request for escorted trip authorizations in 2012; it informed the plaintiff that no such records were located for 2011. Ochoa Decl., Att. 6. BOP also informed the plaintiff that information was redacted from three of the released pages pursuant to FOIA exemption 7(E), 5 U.S.C. § 552(b).

The plaintiff appealed, expressing his complete dissatisfaction "with NO Escorted Trip Authorizations being located for 2011." Am. Compl., Ex. B, ECF 9-1 at 28 (capitalization in original). As for the redacted pages, the plaintiff stated that he could not "dispute something that I cannot review, however, it is clear that these pages should have been provided with the alleged sections of exemption claim reda[c]ted." He then requested the release of the "three pages . . . with the alleged exempt sections reda[c]ted for my review[.]" *Id*. In a letter, dated May 1, 2014, OIP affirmed BOP's withholding decision and its search efforts. OIP informed the plaintiff that "[w]hile BOP's system indicates that you may have been transported for medical purposes in 2011, BOP conducted a further search but still could locate no records concerning any such transports." Am. Compl., Ex. B, ECF 9-1 at 32.

## C. Request Number 2014-00217/2013-3383 (Claim 3)

In a FOIA request, dated August 5, 2013, the plaintiff requested from EOUSA all information "dated after August 29, 2005" pertaining to the restitution order entered in his criminal case in the U.S. District Court for the Northern District of Illinois. Decl. of David

4

Luczynski, Ex. A, ECF No. 13-4.  By letter, dated January 10, 2014, EOUSA informed the plaintiff that no specific records responsive to his request had been located, but released in full a twenty- page "Governments Position Paper dated 8-26-05 which includes Loss/Restitution." *Id*., Ex. B.

In his administrative appeal of the foregoing determination, the plaintiff stated that he had no record of the referenced request number and indicated that his request numbered 13-3383 remained unanswered.  *Id*., Ex. C.  The plaintiff requested an answer to number 13-3383, which "includes a request for any and all correspondence delivered or otherwise from the United States Attorney and/or the Financial Litigation Unit to Schotz." *Id*.  In a letter dated April 28, 2014, OIP clarified that EOUSA had subsequently "converted Request No. 13-3383 to Request No. ORACL-2014-00217.  Therefore, EOUSA's January 10, 2014 response constitutes its response to your Request No. 13-3383." *Id*., Ex. D.  OIP then affirmed EOUSA's no-records response.

**D.  Request Number 2014-00871 (Claim 4)**

In a FOIA request, dated October 1, 2013, the plaintiff sought from BOP all records of three meetings the Health Services Utilization Review Committee held with regard to the plaintiff's request for hernia surgery.  Ochoa Decl., Att. 11.  The plaintiff listed the meetings as having occurred on January 28, 2009, at FCI Big Spring in Texas, and on October 19, 2010, and December 14, 2010, at FCC Tucson.  Following a search of the plaintiff's Medical Record, BOP released nine unredacted pages to the plaintiff by letter, dated March 11, 2014.  *Id*., Att. 12.  In his administrative appeal, the plaintiff stated that in addition to the records contained in his medical file, he was seeking "notes and records of the recommendation [and] discussions[.]"

5

Am. Compl., Ex. D at ECF p. 42.  In a letter, dated June 6, 2014, OIP determined that BOP had conducted a reasonably adequate search for responsive records, and it affirmed BOP's action.  *Id.*, ECF p. 55.

**E.  Request Number 2014-05237 (Claim 5)**

In a FOIA request, dated February 19, 2014, the plaintiff sought from BOP all records pertaining to a transfer request by staff at FCC Tucson.  *See* Ochoa Decl. ¶ 17 & Att. 13.   BOP determined that this request was duplicative, insofar as it sought the same documents that "are routinely maintained in Section 2 of the [Inmate's] Central File," to which the plaintiff was given access in response to his prior FOIA requests.  *Id*. ¶¶ 19-20.  In a letter dated March 17, 2014, BOP informed the plaintiff that no further action would be taken on this request because the requested records were duplicative of records disclosed to him in response to FOIA Request Numbers 2012-03810 and 2014-03429.  *Id*., Att. 16.   OIP affirmed BOP's determination by letter, dated July 11, 2014.  Am. Compl., Ex. E at ECF p. 68, and informed the plaintiff that, if he wanted additional copies of the previously released records, he could submit a new request to BOP "and specify that [he] would like another copy of those records."  *Id*.

**F.  Request Number 2014-06007 (Claim 6)**

In a FOIA request, dated April 1, 2014, the plaintiff sought from BOP all records pertaining to a telephone conference on August 1, 2011, between FCC Tucson Counsel Theresa Talplacido and Warden Apker about the plaintiff's legal activities.  Ochoa Decl., Att. 19.  After determining that the requested information was not maintained in a system of records, BOP made inquiries to the "Executive Assistant/Camp Administrator, the Camp Counselor, and Ms. Talplacido," none of whom recalled such a telephone call. "Ms. Talplacido also confirmed she

6

was never assigned to any of Plaintiff's legal cases." In a letter, dated May 29, 2014, BOP informed the plaintiff that a search "using the terms and search parameters referenced in your request" located no responsive records. *Id.*, Att. 20. OIP affirmed BOP's no-records response by letter, dated September 9, 2014. Am. Compl., Ex. F at ECF p. 80.

### G. Request Number 2014-05293 (Claim 7)

In a FOIA request, dated February 19, 2014, the plaintiff sought from BOP all records pertaining to his designation to FCC Tucson from September 17, 2009 through November 21, 2011. Ochoa Decl. ¶ 23 & Att. 17. BOP interpreted the request as "focus[ed] on Special Investigative Services ("SIS") and seeking SIS records at FCC Tucson for the specified time period. *Id.* ¶¶ 23-24. SIS staff searched the archived paper files at FCC Tucson and the electronic filing system (TRUINTEL) but located no responsive records. Staff determined that a search of the plaintiff's Central File was unnecessary because any responsive records would have been previously disclosed to the plaintiff in response to Request Number 2012-0318, which response provided the plaintiff with access to his "complete Central File, up through March 10, 2012 (minus redactions and withholdings)." *Id.* ¶ 25. BOP issued its no-records response to the plaintiff in a letter, dated July 21, 2014. Ochoa Decl., Att. 18. As of December 23, 2014, OIP had not responded to the plaintiff's appeal of that determination. *Id.*

### H. Request Number 2014-06606 (Claim 8)

In a FOIA request, dated April 24, 2014, the plaintiff sought all of the medical records that BOP provided to Dr. Henderson prior to his hernia surgery. The plaintiff suggested that the search include then-FCC Tucson Medical Director Thomas Longfellow, "Dr. Davis, MAST from the Western Regional Office," other medical staff, and the files of Dr. Henderson and the

7

hospital where the surgery was performed. Ochoa Decl., Att. 21. Medical staff searched the plaintiff's Medical Record and located five pages that Dr. Henderson provided BOP following the plaintiff's surgery. Those pages were disclosed to the plaintiff by letter, dated October 24, 2014. *Id.*, Att. 22.

### I. Request Number 2014-08409 (Claim 9)

In a FOIA request, dated June 16, 2014, the plaintiff sought all records BOP attorney Theresa Talplacido possessed, including records she "authored . . . that refer to Schotz or referring Schotz, identifying or listing Talplacido was one (or the only) recipient of the record." Ochoa Decl. ¶ 32 & Att. 23. A search by legal staff at FCC Tucson located eight "email pages" and one letter from the plaintiff addressed to Talplacido. *Id*. ¶ 33. By letter, dated December 9, 2014, BOP released five responsive pages in their entirety and five redacted pages. Third-party information was withheld pursuant to FOIA exemption 7(C). Ochoa Decl., Att. 25; Def.'s Reply, Ex. 3, ECF No. 30-3.

### J. Request Number 2013-11974 (Claim 10)

In an undated FOIA request, accompanied by a Certification of Identity dated September 11, 2013, the plaintiff sought from BOP all records pertaining to his designation on September 12, 2012, "from Rehabilitation Facility in Tucson, Arizona Cornerstone Hospital back to Care Level 1 inmate's only FCI Safford, Arizona," and his transfer to FCI Terminal Island on September 14, 2012. Ochoa Decl. ¶ 10 & Att. 7. The plaintiff also renewed his request for escorted trip authorizations for 2012. *Id*.

BOP staff searched the plaintiff's Central File "for any transfer or designation records related to Plaintiff's moves on September 12, 2012, and September 14, 2012," and located

eleven responsive pages. *Id*. ¶ 11. By letter, dated April 7, 2014, BOP released ten responsive pages, three containing redactions, and withheld one page in its entirety. BOP informed the plaintiff that it had located no records "regarding your designation from the local hospital to FCI Safford on September 12, 2012," and that it was not including the 2012 escorted trip authorizations because that part of his request was "a duplication of FOIA Request 2013-11514," Ochoa Decl., Att. 8, which had resulted in the release of 2012 escorted trip authorization forms, *see supra* 2-3.

The plaintiff appealed only the no-records determination. Ochoa Decl., Att. 9. In a letter, dated July 17, 2014, OIP informed the plaintiff that a further search had located one responsive page, which it released to the plaintiff in full. *Id.*, Att. 10.

## II. LEGAL STANDARD

Federal courts are authorized under the FOIA "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). An improper withholding occurs when an agency withholds information that is not protected by nine exemptions set forth in the statute or fails to conduct an adequate search for responsive material.

"'FOIA cases typically and appropriately are decided on motions for summary judgment.'" *Georgacarakos v. FBI*, 908 F. Supp. 2d 176, 180 (D.D.C. 2012) (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). "With respect to the applicability of exemptions and the adequacy of an agency's search efforts, summary judgment may be based solely on information provided in the agency's supporting declarations." *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 133 (D.D.C. 2013) (citations omitted). When an

agency's response to a FOIA request is to withhold responsive records, either in whole or in part, the agency "bears the burden of proving the applicability of claimed exemptions." *Am. Civil Liberties Union v. U.S. Dep't of Def. ("ACLU/DOD ")*, 628 F.3d 612, 619 (D.C. Cir. 2011). "The government may satisfy its burden of establishing its right to withhold information from the public by submitting appropriate declarations and, where necessary, an index of the information withheld." *Am. Immigration Lawyers Ass'n v. U.S. Dep't of Homeland Sec.*, 852 F. Supp. 2d 66, 72 (D.D.C. 2012) (citing *Vaughn v. Rosen*, 484 F.2d 820, 827-28 (D.C. Cir. 1973)). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption," and "is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *ACLU/DOD*, 628 F.3d at 619. "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.' " Id. (internal quotation marks omitted) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

When a requester challenges an agency's response based on the adequacy of the search performed, "the defending 'agency must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents.' " *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). "In order to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "Summary judgment may be based on affidavit, if the

declaration sets forth sufficiently detailed information 'for a court to determine if the search was adequate.' " *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 838 (D.C. Cir. 2001) (quoting *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995)).  Although "[t]here is no requirement that an agency search every record system[,] . . . the agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby*, 920 F.2d at 68.  An agency must "explain in its affidavit that no other record system was likely to produce responsive documents." *Id*.

An adequate search is established by the "appropriateness" of the search methods employed, not the "fruits of the search."  Thus, the fact that certain documents were not located does not equate with an inadequate search. *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003); *Boyd v. Criminal Div. of U.S. Dept. of Justice*, 475 F.3d 381, 390-91 (D.C. Cir. 2007)).  "After all, particular documents may have been accidentally lost or destroyed, [ ] a reasonable and thorough search may have missed them," *Iturralde*, 315 F.3d at 315, or records may have been destroyed "in accordance with an agency's normal retention policy," *Anderson v. U.S. Dep't of Justice*, 518 F. Supp. 2d 1, 9-10 (D.D.C. 2007).  On the other hand, summary judgment is inappropriate "if a review of the record raises substantial doubt" about the adequacy of the search. *Valencia-Lucena v. United States Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (citing *Founding Church of Scientology v. National Security Agency*, 610 F.2d 824, 837 (D.C. Cir. 1979)).  Substantial doubt may arise from an agency's failure "to follow through on obvious leads to discover requested documents" or where the record contains "positive indications of overlooked materials." *Id*. at 325-26 (citations and internal quotation marks omitted); *see id*. at 327 (finding search inadequate where the agency informed the

requester that additional responsive records "may be located" at the "federal records center" but declined to search its stored records at that location).

## III. DISCUSSION

As discussed in more detail below, the plaintiff's challenges to the searches conducted by BOP and EOUSA for records responsive to the plaintiff's ten requests are unavailing.

### A. The Defendant's Withholdings

BOP redacted "the [direct] office telephone number, and cellular telephone number, for BOP attorney Theresa Talplacido." Ochoa Decl. ¶ 36. The plaintiff "does not raise any dispute [about] [the] defendant['s] claimed exempt records," Mem. of P. and A. in Supp. of Pl.'s Response Mot. for Summ. J. ("Pl.'s Mem.") at 3,[1] and the Court finds that BOP has properly justified those minimal redactions under FOIA exemption 7(C). *See* Ochoa Decl. ¶¶ 36-39; *cf. Whitmore v. U.S. Dep't of Justice*, ___ F. Supp. 3d ___, ___, 2015 WL 5675579, at *6 (D.D.C. Sept. 25, 2015) (approving EOUSA's withholding of prosecutor's direct telephone number) (citing cases).

Accordingly, summary judgment is granted to DOJ on this aspect of the complaint.

### B. The Defendant's Searches

The plaintiff generally disputes the adequacy of BOP's and EOUSA's searches, characterizing them as an "unauthorized limiting [of the] search parameters." Pl.'s Mem. at 4. This Court has previously rejected the plaintiff's argument that BOP was obligated to search every location he had identified, *see Schotz v. Samuels*, 72 F. Supp. 3d 81, 89-90 (D.D.C. 2014), and finds that the plaintiff has offered nothing to compel a different result in this case.

---

[1] The cited the page numbers are assigned by the electronic case filing system.

1. **BOP**

The Court finds that BOP conducted searches reasonably calculated to locate all responsive records. With regard to each request forming the basis of this action, BOP's declarant has satisfactorily described the files that were searched, the search methods employed and explained why those files were the only ones likely to contain responsive records. *See* Ochoa Decl. ¶¶ 5-6; 8-9; 11; 13-14; 16; 18-20; 22; 24-25; 27-28; 30-31; 33-34; *see also Schotz*, 72 F. Supp. 3d at 90 (finding that "the defendant's declarant has reasonably explained that a search of the plaintiff's central file was likely 'to locate and provide all [responsive] documents' because it is the location where the requested documents are routinely maintained") (citation omitted)). In addition, BOP's declarant has satisfactorily explained why the various locations the plaintiff identified as potential sources of the requested escorted trip authorization forms—Custody Transportation (Captain's Records), the Medical Trips Coordinator's Office, the Transportation Department, and SENTRY—were unlikely to yield responsive records and, thus, were not searched. *See* Ochoa Decl. ¶ 8.

The plaintiff specifically faults BOP for failing to locate, in response to Request Number 2013-11514, one previously released escorted trip authorization form, dated September 29, 2011. Pl.'s Mem. at 21. Nevertheless, "it is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate." *Iturralde*, 315 F.3d at 315 (citations omitted). In any event, the defendant notes that trip authorization forms are retained for one year, and BOP's search in 2013 occurred well beyond that one-year retention period. Def.'s Reply at 3 (citing Ochoa Decl. ¶¶ 7-8). Thus, it is reasonably safe to

conclude that by 2013, the 2011 form could have been destroyed in accordance with BOP's record retention policy.

In response to the plaintiff's opposing argument that BOP failed to search for all of the information he requested about the meetings of the Health Services Utilization Review Committee ("URC") (Request Number 2014-00871), the defendant's counsel represents that the initial interpretation of the request resulted in a search of the plaintiff's Medical Record only because "it was not clear . . . that Plaintiff was seeking URC documentation other than that which was in the medical file." Def.'s Reply at 4, ECF No. 29. According to counsel, an additional search was performed "to determine whether there were any records responsive to the request for 'a URC log kept identifying the date of the meetings, what was discussed and what records, reports, medical tests, results of medical tests, etc., were reviewed." *Id*. Although BOP failed to locate a comprehensive record, it located "URC Meeting Minutes" containing general information, "including who participated, and which referrals were discussed." *Id*. at 5. Following an inquiry to the FCC Tucson medical department, the plaintiff was provided the October 19, 2010 and December 14, 2010 URC Meeting Minutes and "excerpts of the 2010 URC & Trip Tracking Form," after the redaction of third-party identifying information under FOIA exemption 7(C). Def.'s Reply at 5 and Exs. 1 and 2, ECF No. 30. BOP's counsel contacted the medical staff at FCI Big Spring about the January 28, 2009 URC Meeting Minutes but "was informed that URC Minutes are only kept from one program review to another, which occur every three years. FCI Big Spring's medical department had its last program review in July of 2013, and no longer has the Minutes from 2009." *Id*. at 5.

The plaintiff argues correctly that the statements of DOJ's counsel in the Reply are not evidence.  *See* Pl.'s Mot. to Seek Leave to File Surreply at 3-4, ECF No. 35.  But counsel's signature on the brief "represents that 'the factual contentions have . . . evidentiary support,'" and the brief reflects a 'proffer' of [BOP's] diligent efforts."  *Dean v. U.S. Dep't of Justice*, ___ F. Supp. 3d ___, ___, 2015 WL 6673370, at *3 n.1 (D.D.C. Oct. 30, 2015) (quoting Fed. R. Civ. P. 11(b)).  While the defendant's presentation is neither condoned nor encouraged, the plaintiff does not dispute that he received the supplemental release of requested records comprising exhibits 1 and 2 of the defendant's Reply.  And "however fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform."  *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982); *see also Murphy v. Executive Office for U.S. Attorneys*, 789 F.3d 204, 212 n.5 (D.C. Cir. 2015) (noting that a challenge to the adequacy of an agency's search for responsive records "becomes a moot point if the requested information is in fact found but not disclosed.") (citation omitted)).  Therefore, summary judgment is granted to DOJ on the adequacy of BOP's search.

### 2. EOUSA

At EOUSA's direction,[2] the FOIA liaison at the U.S. Attorney's Office for the Northern District of Illinois ("USAO/ILN")—where the plaintiff's prosecution took place and where the

---

[2] EOUSA "is the lead office for FOIA requests" seeking records from the 94 United States Attorney's Offices.  Def.'s Reply at 2 n.1

FOIA request indicated responsive records were likely to be found—searched the LIONS[3] database, utilizing variations of the plaintiff's name and the criminal case number provided in the FOIA request.  Decl. of Sharon Getty ¶ 7, ECF No. 13-4 pp. 16-18.  The LIONS database "searches cases and names logged into the USAO database[.]" *Id*.  The liaison "searched the U.S. District Court, Northern District of Illinois, Case Management and Electronic Case Files database for any evidence of existence of records." *Id*.  In addition, the liaison searched the USAO/ILN's "microfische [sic] file system which includes both criminal and civil cases," and "stored information from PROMIS on CD which is another older database system for searching cases and names." *Id*.  None of those file systems contained records responsive to the plaintiff's request for documents "dated after August 29, 2005."  The liaison informed EOUSA "that while there were no records dated after August 29, 2005 relating to Plaintiff Schotz's restitution," she had located "a copy of the Government's Position Paper dated August 29 [sic], 2005 relating to Plaintiff Schotz which includes Loss/Restitution."  Getty Decl. ¶ 8.  The twenty-page Position Paper was released to the plaintiff in its entirety.  Luczynski Decl. ¶ 5 and Ex. B (releasing Government Position Paper "dated 8-26-05").

EOUSA's declarants state that "[a]ny systems of records within the USAO/ILN likely to contain [responsive] records" were searched, that "the search was conducted utilizing [all] methods which should identify any responsive records," Getty Decl. ¶ 9, and that "[t]here are no other records systems or locations within EOUSA or DOJ in which other files pertaining to plaintiff's criminal case are maintained," Luczynski Decl. ¶ 8.  The plaintiff counters that EOUSA

---

[3]   LIONS is an acronym for Legal Information Office Network System.  *See Cooper v. Stewart*, 763 F. Supp. 2d 137, 142 (D.D.C. 2011), *aff'd*, No. 11-5061, 2011 WL 6758484 (D.C. Cir. Dec. 15, 2011).

"ignor[ed] the obvious genesis of the restitution order, the USDC Court's Docket," and he points to the criminal court's docket and documents he claims to have obtained from that court.  Pl.'s Mem. at 23-24.  Those accepted facts do not raise a genuine dispute about EOUSA's search, however, because an agency's disclosure obligations under the FOIA "extend only to documents it controls and possesses at the time of the FOIA request."  *Schmitz v. United States Dep't of Justice*, 27 F. Supp. 3d 115, 119 (D.D.C. 2014) (citing *Nat'l Sec. Archive v. Archivist of the U.S.*, 909 F.2d 541, 544-45 (D.C. Cir. 1990).  "EOUSA has no control over . . . court documents[.]" *Id*.  Therefore, summary judgment is granted to DOJ on the adequacy of EOUSA's search as well.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that BOP and EOUSA have complied fully with their disclosure obligations under FOIA.  Accordingly, DOJ's motion for summary judgment is granted and the plaintiff's cross-motion for summary judgment is denied.

A separate Order accompanies this Memorandum Opinion.

                                           /s/ *Beryl A. Howell*
                                           UNITED STATES DISTRICT JUDGE

DATE:  April 20, 2016